**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-246

BROOKE JOHNSON a/k/a BROOKE TAYLOR, IRINA VORONINA, SARA UNDERWOOD, CIELO JEAN "CJ" GIBSON, JESSICA HINTON a/k/a JESSA HINTON, KIMBERLY COZZENS a/k/a KIM COZZENS, JOHN COULTER, LAURIE YOUNG a/k/a LAURIE ROMEO, MARKETA LIM a/k/a MARKETA KAZDOVA, MONICA LEIGH BURKHARDT, SARAH STAGE, TIFFANY GRAY a/k/a TIFFANY TOTH, RACHEL KOREN a/k/a RACHEL BERNSTEIN, MERCEDES TERRELL, ALANA MARIE SOUZA a/k/a ALANA CAMPOS, and LINA POSADA,

Plaintiffs,

v.

ALL FLASH & NO CASH, INC d/b/a COPPERHEAD ROAD BAR & NIGHTCLUB,

Defendant.

---

**PLAINTIFFS' COMPLAINT AND JURY DEMAND**

---

Plaintiffs BROOKE JOHNSON a/k/a BROOKE TAYLOR, IRINA VORONINA, SARA UNDERWOOD, CIELO JEAN "CJ" GIBSON, JESSICA HINTON a/k/a JESSA HINTON, KIMBERLY COZZENS a/k/a KIM COZZENS, JOHN COULTER, LAURIE YOUNG a/k/a LAURIE ROMEO, MARKETA LIM a/k/a MARKETA KAZDOVA, MONICA LEIGH BURKHARDT, SARAH STAGE, TIFFANY GRAY a/k/a TIFFANY TOTH, RACHEL KOREN a/k/a RACHEL BERNSTEIN, MERCEDES TERRELL, ALANA MARIE SOUZA a/k/a ALANA CAMPOS, and LINA POSADA, (collectively, "Plaintiffs"), file this Complaint against ALL FLASH & NO CASH, INC, d/b/a Copperhead Road Bar & Nightclub ("Defendant") respectfully allege as follows:

**BACKGROUND**

1. This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club,

Copperhead Road Bar & Nightclub located at 3330 N Academy Blvd, Colorado Springs, Colorado 80917 (hereinafter referred to as the "Night Club" or "Copperhead").

2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) State Common Law Misappropriation of Likenesses Violation of Right to Privacy; Right of Publicity; and d) Negligence and Respondeat Superior.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant ALL FLASH & NO CASH, INC, is a corporation formed under the laws of the state of Colorado, with its principal place of business located at 3330 N Academy Blvd, Colorado Springs, Colorado, 80917. Upon information and belief, ALL FLASH & NO CASH, INC operates Copperhead Road Bar & Nightclub, which is located at 3330 N Academy Blvd, Colorado Springs, Colorado 80917.

8. Venue is proper in the United States District Court for the District of Colorado because Defendant's principal place of business is located in Colorado Springs, Colorado, El Paso County.

9. A significant portion of the alleged causes of action arose and accrued in Colorado

Springs, Colorado and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Colorado Springs, Colorado.

**PARTIES**

***Plaintiffs***

10. Plaintiff Brooke Johnson a/k/a Brooke Taylor ("Taylor") is a well-known professional model, and a resident of Santa Barbara County, California.

11. Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Orange County, California.

12. Plaintiff Sara Underwood ("Underwood") is a well-known professional model, and a resident of Jefferson County, Washington.

13. Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

14. Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

15. Plaintiff Kimberly Cozzens a/k/a Kim Cozzens ("Cozzens") is a well-known professional model, and a resident of Santa Clara County, California.

16. Plaintiff John Coulter ("Coulter") is a well-known professional model, and a resident of Los Angeles County, California.

17. Plaintiff Laurie Young a/k/a Laurie Romeo ("Young") is a well-known professional model, and a resident of Orange County, California.

18. Plaintiff Marketa Lim a/k/a Marketa Kazdova ("Kazdova") is a well-known professional model, and a resident of Los Angeles County, California.

19. Plaintiff Monica Leigh Burkhardt ("Burkhardt") is a well-known professional model, and a resident of Suffolk County, New York.

20. Plaintiff Sarah Stage ("Sarah") is a well-known professional model, and a resident of Los Angeles County, California.

21. Plaintiff Tiffany Gray a/k/a Tiffany Toth ("Gray") is a well-known professional

model, and a resident of Orange County, California.

22. Plaintiff Rachel Koren a/k/a Rachel Bernstein ("Koren") is a well-known professional model, and a resident of San Diego County, California.

23. Plaintiff Mercedes Terrell ("Terrell") is a well-known professional model, and a resident of Orange County, California.

24. Plaintiff Alana Marie Souza a/k/a Alana Campos ("Campos") is a well-known professional model, and a resident of Clark County, Nevada.

25. Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

***Defendant***

26. Defendant, ALL FLASH & NO CASH, INC d/b/a Copperhead Road Bar & Nightclub, is a corporation formed under the laws of the State of Colorado and registered to conduct business in Colorado. During times relevant to this action, ALL FLASH & NO CASH, INC operated Copperhead Road Bar & Nightclub.

27. Service of process may be perfected upon Defendant ALL FLASH & NO CASH, INC d/b/a Copperhead Road Bar & Nightclub by serving the registered agent for service of process, Rodney O. Beers, who can be located at 4907 Alteza Dr., Colorado Springs, CO 80917.

## FACTUAL ALLEGATIONS

28. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

29. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

30. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by

Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

31. In the case of each Plaintiff, this apparent claim was false.

32. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

33. No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

34. Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

35. Taylor Is a world-renowned model who has appeared in magazines such as FHM, Maxim, Viva Glam, and Stuff. She has also appeared in commercials for brands like Fredrick's of Hollywood, Coors Light, and Budweiser. In addition, Taylor has been featured in countless other catalogs, television commercials, and shows.

36. That we know of, Taylor is depicted in the photos in Exhibit "A" to promote Copperhead on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Taylor was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

37. Taylor has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38. Voronina is an international model and actress. After becoming Playboy's Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob

Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as FHM, Maxim, Playboy (in 20 countries), Max, Ocean, Shape, 944, Knockout, Q, People, Kandy, Rukus, Vape and Browz magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands. In 2013, Voronina was named Kandy Magazine's Model of the Year as a result of her fans downloading the highest number of digital issues that year. Voronina got her first big screen break in "Reno 911! Miami.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," & "Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, X (formerly known as Twitter) and YouTube. She has more than 5.6 million social media followers.[1]

39. That we know of, Voronina is depicted in the photos in Exhibit "B" to promote Copperhead on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Voronina was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

40. Voronina has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41. Underwood first appeared in Playboy in the pictorial "The Girls of the Pac 10" in

[1]In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

the October 2005 issue, in which she also graced the cover. She was the Playmate of the Month in the July 2006 issue of the famous men's magazine and was named Playmate of the Year in 2007. Underwood has been featured in many Playboy videos and has appeared as herself in the films The House Bunny (2008) and Miss March (2009), as well as in episodes of reality TV series such as Kendra (2009), The Girls Next Door (2005), and Bridget's Sexiest Beaches (2009). She has also worked on television as a continuity announcer for the Blackbelt TV cable network and co-hosted hundreds of episodes of G4's Attack of the Show. She is the co-owner of Sugar Taco and has her YouTube channel, Cabinland, with 1.05 million subscribers. Underwood also has 8.6 million followers on Instagram, 1.4 million followers on TikTok, and 1.3 million followers on X (formerly known as Twitter).

42. That we know of, Underwood is depicted in the photos in Exhibit "C" to promote Copperhead on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Underwood was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

43. Underwood has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44. Gibson is an American model who enjoys great success in her industry. Gibson was the Import Tuner magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including FHM, American Curves, Supreme, MuscleMag International, Muscle & Fitness, and Teeze, Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

Gibson has 71,600 Instagram followers.

45. That we know of, Gibson is depicted in the photos in Exhibit "D" to promote Copperhead on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Gibson was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

46. Gibson has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47. Hinton was discovered by a talent manager at a wedding at age 14. By age 16 she locked in three national TV commercials and made guest appearances on Baywatch and 7th Heaven. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for Victory Poker, and Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was named Creative Director for MAJR Media and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 3.8 million followers on Facebook, Instagram and X (formerly known as Twitter).

48. That we know of, Hinton is depicted in the photos in Exhibit "E" to promote

Copperhead on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Hinton was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

49. Hinton has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50. Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

51. That we know of, Cozzens is depicted in the photos in Exhibit "F" to promote Copperhead on its Facebook page. These Images were intentionally altered to make it appear that Cozzens was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

52. Cozzens has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

53. Coulter was born in Arizona. He spent two years studying illustration on a full art scholarship at the University of Arizona before continuing his studies at the prestigious Art Center College of Design in Pasadena. Coulter also pursued performing arts, which led him to "The Happiest Place on Earth". At Disneyland, he worked both as an artist in the entertainment art department and moonlighted as Prince Charming in the Main Street Electrical Parade before going on to play other Disney characters. One of the highlights was playing Tarzan in the opening cast

of Tarzan Rocks. His princely charm also took him to Tokyo Disneyland, where he continued to perform several roles. Coulter's modeling career has lasted over 20 years leading him to New York and Europe where he worked with renowned photographers Ellen Von Unwerth and David Lachapelle. He shot a Jeans Campaign with Cindy Crawford and a MAC Cosmetics campaign with Mary J. Blige and Lil' Kim. He has walked the runways with Naomi Campbell, Kate Moss, Marcus Schenkenberg and Tyson Beckford and has appeared in television commercials with Paris Hilton, Heidi Klum, Kristen Chenoweth, and Karolina Kurkova. Coulter has been on Tyra Bank's America's Next Top Model, in a Madonna video directed by Guy Ritchie, and can be seen on the Britney Spears' Blackout Album as the controversial priest. He is most recognizable with his clothes off, gracing the packaging and ads for Joe Boxer, Fruit of the Loom, Murano, Undergear and International Male. His fine arts background has manifested itself in many areas such as costuming, photo and fashion styling, as well as hair and makeup.

54. That we know of, Coulter is depicted in the photos in Exhibit "G" to promote Copperhead on its Facebook page. These Images were intentionally altered to make it appear that Coulter was either an employee working at Copperhead, that he endorsed Copperhead, or that he was otherwise associated or affiliated with Copperhead.

55. Coulter has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of his Image, and has suffered, and will continue to suffer, damages as a result of same.

56. Young may not be "the girl next door" but she is certainly the all California, bikini wearing, sun worshipping, beach girl. Young has been a cheerleader since the age of seven and continued through High School to competition and coaching juniors. Young's modeling and acting career has been achieved by natural growth and development from being offered continual work while being on the beach or cheerleading. Young has contract work with Shirley's of Hollywood, is an ambassador and cheerleader for the NHRA drag racing series, shot the cover and is the 2015 Kandy Magazine model of the year and has done several TV commercials. Her most famous one

being the late-night spokeswoman for Adam and Eve products that has become a bit of a cult favorite.

57. That we know of, Young is depicted in the photos in Exhibit "H" to promote Copperhead on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Young was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

58. Young has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

59. Kazdova was first discovered in a family vacation and was offered her first contract at the age of fourteen. When she turned fifteen, her agents from Czech Republic started sending her all over Asia and Europe to work as a model. She has worked in places such as Hong Kong, Tokyo, Beijing, Shanghai, Guangzhou. As well as throughout Europe, such as Milan, London, Paris, Portugal, Germany, Austria, and Dubai. She has appeared in Elle, Style, Cosmo Girl, Dolce Vita, Nylon, Prestige Paris, Fiasco, Composure, Formen, Modern Salon, Viva Glam and other magazines. Since 2011, she has been working in New York/ L.A. and has worked with Nordstrom, Macy's, Tadashi Shoji, Anthony Franco, Alicia Estrada, Mirabella Beauty, MAC, Level 99, Dreamgirl Lingerie, Erka Mare Swimwear, HausofPinkLemonaid Swimwear, HauteLook, Patagonia, and many others.

60. That we know of, Kazdova is depicted in the photo in Exhibit "I" to promote Copperhead on its X account (formerly known as Twitter). This Image was intentionally altered to make it appear that Kazdova was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

61. Kazdova has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and

will continue to suffer, damages as a result of same.

62. Burkhardt worked as a bartender and dental assistant prior to being encouraged by her childhood friend and fellow Playboy Playmate, Courtney Culkin, to try out. She has modeled for the famous men's magazine in various newsstand special editions (she was featured on the cover of "Playboy's College Girls" in September 2005). She was the Playboy Cyber Girl of the Week for August 29, 2005 and the Cyber Girl of the Month for December, 2005. Burkhardt was subsequently named Cyber Girl of the Year for 2006. Moreover, she was the Playmate of the Month in the March, 2006 issue of Playboy and graced the cover of the August, 2006 issue. Burkhardt has appeared in several Playboy videos and on a handful of episodes of the reality TV series, The Girls Next Door (2005). She has acting roles in the movies, The Duel (2006), The Pool Boys (2009), The Gentleman (2007) and Road Raiders (2000). Burkhardt has popped up as an extra not only in Spider-Man 3 (2007), but also on episodes of both Entourage (2004) and CSI: Miami (2002).

63. That we know of, Burkhardt is depicted in the photos in Exhibit "J" to promote Copperhead on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Burkhardt was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

64. Burkhardt has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

65. Stage has worked for brands such as Fredericks of Hollywood, Jafra Cosmetics, Buffalo Jeans, Sky Clothing, and Beach Bunny Swimwear. She has also done commercials for Kia, Budweiser, Samsung, and has appeared in magazines such as *Maxim*, *Shape*, and *Allure*. Stage is a social media influencer with over 2 million followers on Instagram, over 21,000 followers on Twitter, 50,000 views on Snapchat, and over 113,000 likes on Facebook.

66. That we know of, Burkhardt is depicted in the photos in Exhibit "K" to promote

Copperhead on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Burkhardt was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

67. Burkhardt has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same

68. Gray is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Muscle & Fitness, Guitar World, Ripped, Seventeen, Pump, and Maxim, but has also posed for various catalogs. Gray has even appeared on television shows such as Tosh.O and The Daily Habit. She has booked jobs shooting for lingerie companies such as Shirley of Hollywood, Seven Til Midnight, Elegant Moments, and Jvalentine. She is also a real estate agent in Southern California and part owner of Sugar Taco, a plant-based restaurant located in Los Angeles. Gray currently has over 3.7 million Facebook followers, 1.2 million Instagram followers, and over 368.7K X (formerly known as Twitter) followers.

69. That we know of, Gray is depicted in the photos in Exhibit "L" to promote Copperhead on its Facebook page and Google. These Images were intentionally altered to make it appear that Gray was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

70. Gray has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

71. Koren is an international model who has walked runways for fashion shows in

Miami's Mercedes Benz Fashion Week, filmed for the Travel TV show “Bikini Destinations” all over the world, shot for major campaigns in Los Angeles, CA, and is the face of many brands. Koren appeared in a campaign for MIDORI with Kim Kardashian and in the movie “Date Night” with Steve Carell and Tina Fey. She also played the character of “Sue Emory” in an episode of “The Closer” where she can be seen doing her own stunts. She has been published in major campaigns and worked for companies such as Nike, Reebok, Affliction Clothing, Volcom, Body Glove, Sinful, American Customs, Alo, *Modern Salon Magazine*, No Fear, Axe Body Spray, Paul Mitchell, *Vibra Magazine*, *Launch Pad Magazine*, *Cut & Dry Magazine*, *Hairdo Magazine*, Sunset Tan, Divine Boutique, *Esquire Magazine*, *Vogue Magazine*, True Religion, Jessica Simpson Swimwear, Ed Hardy, Christian Audigier, Smet, *Rebel X Magazine*, SNI Swimwear, Tommy Bahama, Roma, J Valentine, Sunsets Inc, B Swim, Love Culture, *Maxim*, *Viva Glam Magazine*, Fantasy Lingerie, Elegant Moments, So Cal Swimwear, No Fear, *Swim Magazine*, American Honey, and Have Faith Swimwear. She currently owns her own company, Cashmere Hair Extensions, which appeared on the show “Shark Tank” in 2013.

72. That we know of, Koren is depicted in the photos in Exhibit “M” to promote Copperhead on its Facebook page. These Images were intentionally altered to make it appear that Koren was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

73. Koren has never been employed at Defendant’s establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant’s unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

74. Terrell is an American model and spokesmodel. Ms. Terrell is a contract model who travels and works with Monster Energy Supercross. Ms. Terrell also appears with The Superbike Races special events and also with Moto GP Championship races. Ms. Terrell is probably best known and has a huge social media following as the main Ring Girls for Bellator MMA fighting. Ms. Terrell has featured in a number of magazines and has appeared on the cover

of *Wheels and Heels* magazine, *Dub Magazine, Beer magazine, Girls Lowrider* and many more. She also has her own podcast show known as The MAJic hour, and her talk show named "Mercedes and the Chap." She currently has 585K Instagram followers, 4.6 million followers on Facebook, and 126.1K followers on TikTok.

75. That we know of, Terrell is depicted in the photos in Exhibit "N" to promote Copperhead on its Facebook page. These Images were intentionally altered to make it appear that Terrell was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

76. Terrell has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

77. Campos is a Brazilian model who started working at the age of 15. Campos was scouted by the director of Ford Models, which remained her agency for five years. While she was nominated in numerous beauty pageants in her country, she decided to move to the United States at 20 and is currently represented by Wilhelmina Models. Campos has been published in *Playboy*, *Astonish*, *Viva Glam*, and *Bliss* magazines. She has also been in many campaigns such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, I Collection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar, and appeared as a spokes model for My Body Journey and as a cover girl for *Arizona Foothills Magazine*. In addition, Campos was featured in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman, and Michael Douglas.

78. That we know of, Campos is depicted in the photos in Exhibit "O" to promote Copperhead on its Facebook page. These Images were intentionally altered to make it appear that Campos was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

79. Campos has never been employed at Defendant's establishment, has never been

hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

80. Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Bésame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swimwear, Ujeans, as well as many others. She currently has 102 thousand Instagram followers, 4.12 thousand YouTube subscribers, 17.3 thousand Facebook followers, and over 5.2 thousand Twitter followers.

81. That we know of, Posada is depicted in the photos in Exhibit "P" to promote Copperhead on its Facebook page. These Images were intentionally altered to make it appear that Posada was either an employee working at Copperhead, that she endorsed Copperhead, or that she was otherwise associated or affiliated with Copperhead.

82. Posada has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same

***Defendant's Business Activity and Misappropriation***

83. Defendant operates (or operated, during the relevant time period,) a so-called Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

84. Defendant owns, operates, and controls Copperhead's social media accounts, including its Facebook, Twitter, and Instagram accounts.

85. Defendant used Copperhead's Facebook, Twitter, and Instagram accounts to promote Copperhead's, and to attract patrons.

86. Defendant did this for its own commercial and financial benefit.

87. Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential

clientele that each Plaintiff either worked at Copperhead, endorsed Copperhead, or was otherwise associated or affiliated with Copperhead.

88. Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Copperhead to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

89. Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Copperhead, and at no point have any of the Plaintiffs ever endorsed Copperhead or otherwise been affiliated or associated with Copperhead.

90. All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

91. Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

92. Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

93. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

94. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

95. Most licenses to use a model's image are for one, two, or three year terms; but

almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

96. Defendant was aware that, by using Plaintiffs' Images, it was violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Copperhead.

97. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

98. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Copperhead.

99. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

100. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

101. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Copperhead's website, Twitter, Facebook, or Instagram accounts.

102. Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

103. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

104. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

105. Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment, or endorsed Defendant'

businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

106. Thus, this was done in furtherance of Defendant's commercial benefit.

107. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' images either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

108. Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

109. As such, an unauthorized use of Plaintiffs' images image to promote a establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' images for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' images image and likeness

110. Defendant's use of Plaintiffs' images, likenesses and/or identities constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

111. Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead

potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment

112. Defendant knew that its use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant' establishment.

113. Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

114. As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

115. Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

116. Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs been damaged in an amount to be determined at trial. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

117. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

118. Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

119. Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

120. Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

121. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

122. Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant's establishment events or activities, or consented to or authorized Defendant's usage of their image

in order to advertise, promote, and market Defendant's businesses or Defendant's establishment events and activities.

123. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant's establishment events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Defendant's establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

124. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

125. Defendant knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

126. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

127. Defendant's wrongful conduct as described herein was willful.

128. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

129. Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

130. The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

131. Defendant have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

132. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
**(State Common Law Misappropriation of Likenesses)**
**Violation of Right to Privacy; Right of Publicity**

133. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

134. Plaintiffs hold the exclusive right to control the public dissemination of their names and likenesses for commercial use.

135. Defendant may not, and owe a duty not to, publish, print, display, or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, photograph, or other likeness of the Plaintiffs without their express consent to such use.

136. The Plaintiffs never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of their images, likenesses, or identities to advertise, promote, market, or endorse the Defendant's business or activities, or for any other commercial or other purpose;

137. Nevertheless, Defendant published, printed, displayed, and/or publicly used the Plaintiffs' images, likenesses, and identities on its social media sites for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising, and marketing Defendant and its events and activities, and to lure customers and drive traffic to Defendant.

138. Defendant used Plaintiffs' images, likenesses, and/or identities as described herein intentionally, without authority and to its commercial benefit in order to, inter alia, create the false

perception that the Plaintiffs worked at, would appear at, or were otherwise affiliated with Defendant, endorsed Defendant or Defendant's business activities, and/or consented to or authorized Defendant' usage of their images, likenesses, and/or identities in order to advertise, promote and market Defendant's business activities.

139. Defendant's use of the Plaintiffs' images, likenesses, and identities to advertise, promote, and market Defendant's business, events, and activities as described in this Complaint was false, misleading, and a misrepresentation of fact.

140. The Plaintiffs' readily identifiable bodies and faces are shown in the well-lighted images used by Defendant.

141. Defendant misappropriated Plaintiffs' images and likenesses without notice or knowledge to the Plaintiffs and without even attempting to acquire Plaintiffs' permission.

142. Plaintiffs did not give Defendant permission to use their images or likenesses.

143. Defendant's unauthorized appropriation and continuous use of the Plaintiffs' images, likenesses, and/or identities, as described herein, violated Plaintiffs' common law rights of privacy and specifically, their right to publicity.

144. The Defendant acted intentionally or recklessly by selecting Plaintiffs' images and, knowing it did not have permission to use the images for commercial gain, by posting the images on Defendant's social media sites in an effort to market the Defendant's establishment business and its events and activities.

145. Defendant is in the entertainment business, and knew or should have known of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of a professional model's image and likeness for Defendant's commercial benefit.

146. Nevertheless, Defendant circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of a photoshoot, payments to Plaintiffs' agents or agencies, and the costs of licensing, totaling a substantial sum of money and resulting in damage to the Plaintiffs and a windfall to the Defendant.

147. Defendant has caused and will continue to cause irreparable harm and damage to the Plaintiffs, their reputations, and their brands, by falsely attributing to the Plaintiffs their involvement with or endorsement of Defendant's establishment and Plaintiffs' association with events and activities relating thereto.

148. Defendant has damaged Plaintiffs as a direct, foreseeable, and proximate result of their unauthorized use of Plaintiffs' images, likenesses, and/or identities without compensating Plaintiffs, thereby entitling Plaintiffs to recover in money damages the actual and fair market value of each misappropriated use of their images and likenesses, and damages for reputational harm, in amounts to be established by proof at trial.

149. As a further direct and proximate result of Defendant's conduct as alleged herein, Defendant has earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

150. As further direct and proximate result of Defendant's conduct as alleged in here, Plaintiff have experienced mental and emotional anguish and suffering

## FOURTH CAUSE OF ACTION
**(Negligence and Respondeat Superior)**

151. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

152. Plaintiffs are further informed and believe and herein allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

153. Further, Defendant should have maintained, or failed to maintain, policies and

procedures to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

154. Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on Plaintiffs' property and publicity rights.

155. Defendant further owed a duty of care to consumers at large to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

156. Defendant breached its duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

157. Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and Colorado law, were not violated. Defendant breached its duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

158. Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without their consent, authorization and done so in a false, misleading, and/or deceptive manner.

159. As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes

of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Copperhead's Night Club;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(e) For such other and further relief as the Court may deem just and proper.

Dated: January 24, 2025.
Chicago, Illinois

/s/ Joseph N. Casas
Joseph N. Casas
Illinois Bar No. 6274674
California Bar No. 225800
**THE CASAS LAW FIRM, P.C.**
401 North Michigan Avenue
Suite 1200
Chicago, Illinois 60611
Tel: 855-267-4457
Fax: 855-220-9626
joseph@talentrights.law

/s/ John V. Golaszewski
John V. Golaszewski
New York Bar No. 4121091
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th fl.
New York, NY 10019
Tel: 855-267-4457
Fax: 855-220-9626
john@talentrights.law
Pro Hac Vice Application
Forthcoming